IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DUSTIN ANTHONY ADAMS, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 3:12-cv-787 |
| TENNESSEE DEPARTMENT OF CORRECTIONS, | ) Judge Trauger |
| DR. INESTES SATOR, and | ) |
| CHARLES BOUGKER, | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

The *pro se* complaint filed by plaintiff Dustin Adams, a state prisoner presently incarcerated at Riverbend Maximum Security Institution ("RMSI"), is before the court for an initial review pursuant to 28 U.S.C. § 1915A(a). Under this statute, the Court must conduct an initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." The present complaint falls within the purview of § 1915A because the plaintiff seeks to sue the Tennessee Department of Corrections ("TDOC"), a governmental entity, and Dr. " Inestes" Sator[1] and Corrections Officer Charles Bougker, both government employees or agents. Upon conducting the initial review, the Court must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

**I.     Factual Allegations**

The complaint seeks damages under 42 U.S.C. § 1983 based on the defendants' alleged violations of the plaintiff's constitutional rights. The plaintiff alleges that in July 2010, three correctional officers from "North East Correctional Facility"[2] were fired because of being criminally involved with the plaintiff, Dustin Adams. A month after the officers were fired, Adams received a death threat by mail from an anonymous source. Adams was interviewed about the letter by Sgt. Craig Julian, Internal Affairs.

---

[1] The Court is aware that a Dr. Inocentes Sator is a medical doctor who works at RMSI.

[2] The Court presumes the plaintiff intends to refer to the Northeast Correctional Complex in Mountain City, Tennessee.

In November 2010, while housed at the Turney Center Industrial Complex, Adams was attacked by another inmate wielding a pillowcase full of size "D" batteries. The plaintiff claims the reason for the attack was "because of Internal Affairs Agent; Mike Alison." (Complaint, Exhib. A, ECF No. 1-1, at 1.) The plaintiff claims that his confidential and private statements to Alison were what caused "four individuals to be convicted and charged in Mountain City, TN." (*Id.*)

On July 7, 2011, Adams was transported to RMSI due to "gang threats." He states that at RMSI, while he was housed in cell number 1-C-209, he was "bugging cell phones and had Cocaine/Marijuana." (*Id.* at 2.)

On July 27, 2011, Adams was strip-searched by corrections officers Puckett and Genovese in a private room. He was then taken to "Medical" by the same officers, where he was again strip-searched in front of the Captain. Adams asserts that officers Puckett and Genovese also searched his cell and found a cellular phone pushed down into the toilet bowl. He claims he was not written up for this infraction "due to confidential information on how Mr. Adams became in possession of the contraband," but "[t]he confession was made to Puckett that [defendant] Bougker [another corrections officer] was selling phones, marijuana and cocaine to him [Adams]." (*Id.*) Adams does not state by whom this confession was made, but the court understands Adams to be saying that he confessed to Puckett that he bought the contraband from defendant Bougker. Eight hours later Adams was moved from Medical to cell number 1-B-203. His property was removed from his former cell (1-C-209) and brought to his new cell by Officers Bougker and Davis.

On July 29, 2011, "[a]n attempt was made to kill Dustin Adams with an unknown drug/substance along with two bags of marijuana, one bag of tobacco with papers and a syringe." (*Id.* at 3.) This contraband was delivered to the plaintiff through the "pie-hold flap" on his cell door, unit 1-B-203, by Officer Bougker at 7:22 p.m. on that day.

Three hours later, Adams injected himself with what he believed to be cocaine. The substance caused him to have a seizure, and he was taken by ambulance to the hospital. He was interviewed a few days later by an Agent Rossi and blood work was performed, but Adams never learned what substance caused his seizure. Whatever it was, Adams remained very ill for the next three months and was housed in Medical for four months. Upon release from Medical he was placed in cell 1-C-102; Officer Bougker worked on this unit. Adams remained at RMSI for approximately ten more days before being transferred to the Morgan County Correctional Facility. He remained there for twenty-eight days before being transferred to

South Central Correctional Facility. On May 1, 2012, he was transferred back to RMSI.

Adams alleges generally that, over the course of his lengthy incarceration, he has been assaulted and threatened by members of different gangs, and, also over the course of his incarceration, he "began to get criminally involved with Correctional Officers." (*Id.* at 4.) He implies that he knows more than he is telling: "So much has happened and yet to surface?" (*Id.*) He alleges that he lives in constant "total fear," suffering frequent panic attacks and mental anguish over what has happened to him while he has been in prison.

The plaintiff lists as defendants in this action the Tennessee Department of Corrections, Dr. "Inestes" Sator, and Corrections Officer Charles Bougker. He seeks compensatory damages for pain and suffering, mental and emotional distress, future medical bills, and "general relief." (Complaint, ECF No. 1, at 5.)

**II.     Standard of Review**

Under 28 U.S.C. § 1915A, the court must dismiss any portion of a civil complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity that is frivolous or fails to state a claim upon which relief can be granted. The Sixth Circuit has confirmed that "the dismissal standard articulated in [*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)] and [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007),] governs dismissals for failure to state a claim under [§ 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive scrutiny under § 1915A(b)(1), "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).

Although the court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), "[o]ur duty to be 'less stringent' with *pro se* complaints does not require us to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

**III.     Law and Analysis**

To state a claim under § 1983, a plaintiff must "identify a right secured by the United States Constitution and deprivation of that right by a person acting under color of state law." *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992); *West v. Atkins*, 487 U.S. 42, 48 (1988).

**A.     The Claims against TDOC**

The 11th Amendment to the United States Constitution bars § 1983 claims against a State or any arm of a State government. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989). The Tennessee Department of Corrections ("TDOC") is considered part of the State of Tennessee for purposes of federal civil-rights claims, and is therefore not a suable entity under § 1983, either for damages or injunctive relief. *See Hix v. Tenn. Dep't of Corrs.*, 196 F. App'x 350, 355 (6th Cir. 2006) ("The TDOC is not a 'person' within the meaning of § 1983, and is therefore not a proper defendant." (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989))). This defendant is therefore immune from suit under § 1983. The claims against TDOC will therefore be dismissed with prejudice.

**B.     The Claims against Dr. Inestes Sator**

It is well settled that a civil rights plaintiff must allege the personal involvement of a defendant to state a claim against him under 42 U.S.C. § 1983. *See, e.g.*, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691–92 (1978) (section 1983 liability cannot be based upon a theory of respondeat superior); *Taylor v. Mich. Dep't of Corrs.*, 69 F.3d 76, 81 (6th Cir. 1995) (plaintiff must allege facts showing that defendant participated in, approved of or knowingly acquiesced in alleged misconduct to establish liability).

In this case, the complaint does not contain any factual allegations concerning Dr. Sator. In fact, other than listing Dr. Sator in the caption of his complaint, the plaintiff does not mention Dr. Sator's name anywhere in the complaint. Further, while the plaintiff alleges that he was housed in "Medical" at RMSI for four months, he does not assert that he received constitutionally inadequate medical care, or that the medical staff or any person at RMSI (or at any of the other prisons in which the plaintiff has been housed) was deliberately indifferent to his serious medical needs. Consequently, the plaintiff has failed to show that this defendant deprived him of any right secured by the United States Constitution, as required to state a claim against him under 42 U.S.C. § 1983. The complaint as to Dr. Sator will therefore be dismissed without

prejudice for failure to state a claim upon which relief may be granted.

### C. The Claims against Officer Bougker

Drawing all permissible inferences in favor of the plaintiff, the court understands the plaintiff to be alleging that Officer Bougker intentionally poisoned him by providing him with a cocaine-like substance that was laced with some unidentified contaminant, possibly in retaliation for the plaintiff's having reported to prison authorities that Officer Bougker was selling contraband to him inside RMSI. Construing the complaint very liberally, with due regard to the plaintiff's status as a *pro se* litigant, the court finds that the complaint contains sufficient factual averments that, if true, "state a claim to relief that is plausible on its face" under the Eighth Amendment. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

First, as a corrections officer working at a TDOC-operated prison, Officer Bougker was a person acting under color of state law. With respect to whether his actions violated the plaintiff's constitutional rights, it is clear that, in the prison context, the Eighth Amendment proscribes the unnecessary and wanton infliction of pain on prisoners. *See, e.g.*, *Whitley v. Albers*, 475 U.S. 312, 319 (1986). To make out a claim under the Eighth Amendment, the prisoner must satisfy both an objective and a subjective component. *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir.1993). The subjective component focuses on the state of mind of the prison officials. The relevant inquiry is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (internal quotation marks omitted). The objective component requires the pain inflicted to be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). However, the seriousness of the injuries is not dispositive: "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . whether or not significant injury is evident." *Hudson*, 503 U.S. at 9.

Here, the plaintiff alleges that Bougker intentionally poisoned him, and that he spent four months in the prison medical unit as a result. For purposes of the initial review, the court finds that the plaintiff has stated a claim against Bougker based upon the alleged violation of his rights under the Eighth Amendment.

### IV. Conclusion

While expressing no opinion as to the merits of the claims, the court will permit the claims against

defendant Charles Bougker in his individual capacity to proceed, and will direct service upon that defendant.

The claims against the remaining defendants will be dismissed for the reasons stated herein.

An appropriate order will enter.

_____
Aleta A. Trauger
United States District Judge